KLIEBERT and GRISBAUM, Judges,
dissenting with written reasons.
Because we are convinced either that the merits should not be reached or that, if reached, they are incorrectly disposed of, we respectfully dissent. Since this appeal comes after a judgment maintaining an exception of prescription, the record does not contain the necessary evidentiary findings to clearly ascertain whether the facts fall within the narrow ambit of the recent Crier v. Whitecloud, 486 So.2d 713 (La.1986) decision. Crier determined that “when injury does not immediately follow the act or omission, the statute [La.R.S. 9:5628] does not by its terms prevent the suspension of prescription during the period between the date of the act or omission and the date that injury first results from the act or omission.” Id. at 714. While we, like the majority, find the rationale of Crier “a novel one,” we appreciate that under Crier at least one subset of circumstances is unaffected by the amendment of La.R.S. 9:5628. Should the instant ease fall into this subset, there is no basis on which to found any constitutional decision. Nonim-pacted plaintiffs have nothing of which to complain, no conduit through which to raise the constitutional issues the majority rushes to decide. Thus, at the very least, we should remand.
As to the constitutional merits, we are convinced our rationale in McBride v. Earl K. Long Memorial Hosp., 459 So.2d 602 (La.App. 5th Cir.1984) is the sounder view. There we reasoned that La. R.S. 9:5628 “operated to eliminate plaintiff’s vested right to sue on his pre-existing cause of action [the act of malpractice occurred pri- or to September 12,1975, the effective date of the statute] without providing a reasonable time following its enactment for a plaintiff ... to assert his pre-existing claims” and that “absent such a provision ... the statute cannot be retroactively applied.” Id. at 605 (emphasis in original).
Relying on the very same precedent underpinning McBride, Lott v. Haley, 370 So.2d 521 (La.1979), the majority likewise begins with the premise that “a newly-created [sic] statute of limitation or one which shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights.” Lott at 524. Having properly begun, however, the *401 majority goes on to conclude that “the statute is constitutional and establishes a reasonable time for the exercise of plaintiffs’ rights; [and] that plaintiffs’ suit[,] filed more than three years beyond the act or omission and more than three years beyond the effective date of the statute[,] has prescribed.” In fact, of course, the statute, as the majority also concedes, “makes no transition provisions to cover causes of action arising from acts of malpractice occurring prior to September 12, 1975.” Essentially, then, the majority acknowledges the correct factual scenario and, after spewing forth much tenuously relevant jurisprudence, reaches a conclusion that not only does not follow but also begs the question presented. We cannot say that La.R.S. 9:5628 “establishes a reasonable time for the exercise of plaintiff’s rights,” for it speaks to these plaintiffs not at all, establishing no grace period in which they might have brought suit after the statutory amendment.
Imperative to the majority’s rationale is the utter corruption of the rule of Lott v. Haley, supra. The Lott rule of law has been carefully altered to say that, if the disputed statute does not itself provide a grace period for exercise of a vested right, a court in essence may make one up by attuning its empathetic faculties to what the legislature intended. Certainly this is not what Lott says nor is it a legitimate extension thereof. In the case contemplated by Lott, where a statutory grace period is provided in which to exercise a previously vested right, an affected party necessarily has proactive and official notice that he must exercise his right in a delimited time or be forever barred from doing so. However, in the case not contemplated by Lott, where a court itself confects a “reasonable” grace period, an affected party necessarily receives retroactive notice of a period that might well vary according to the appellate circuit in which he finds himself. In fact, as here, a party might not discover he had a grace period at all until after it has expired. There is very little “grace” in such a grace period, we think, and very little justice or due process of law in such a mode of procedure.
By manufacturing an expired grace period, the majority abolishes the plaintiffs’ vested right and in the same breath politely informs them of the grace period’s existence. There is no semblance of justice in such a procedure, the situation in fact being analogous to that disapproved in Hernandez v. Montgomery, 2 Mart. (N.S.) 422 (La.1824). There it was early established that
[ijndeed the idea of a man loosing his right, by not bringing an action, which it was impossible he could bring, involves such a contradiction in itself, and leads to such monstrous injustice, that nothing short of the most positive law could authorize any tribunal to sanction such a doctrine.
Id. at 433. In the wake of such long-settled principles, the majority’s strained attempt to manufacture, from bundles of raw nothingness, a reasonable grace period brings to mind that evanescent broth of which Mr. Lincoln spoke, soup “ ‘made by boiling the shadow of a pigeon that had starved to death.’ ” Interlake Iron Corp. v. Nat’l. Labor Relations Bd., 131 F.2d 129, 133 (7th Cir.1942). Such soup we shall neither serve nor sip.